IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02714-WJM-KLM

NATHANAEL EUGENE OWENS,

     Plaintiff,

v.

SIOBHAN BURTLOW, F.C.F. Warden,
JOSHUA LESSAR, LT Head of Mailroom, and
STEVENS, Sgt. F.C.F. Mailroom,

     Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)** [#28][1] (the "Motion"). Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#33] in opposition to the Motion [#28], and Defendants filed a Reply [#36]. The Motion [#28] has been referred to the undersigned for recommendation pursuant to 28 U.S.C. § 636(b) and D.C.COLO.LCivR 72.1(c). *See* [#29]. Having reviewed the entire case file and being

_____

[1] "[#28]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF). This convention is used throughout this Recommendation.

[2] The Court must construe liberally the filings of pro se litigants. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [a] plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

sufficiently advised, the Court respectfully **RECOMMENDS** that the Motion [#28] be **GRANTED in part** and **DENIED in part** as outlined below.

## I. Summary of the Case

At all times relevant to this lawsuit, Plaintiff has been a prisoner in the custody of the Colorado Department of Corrections at the Fremont Correctional Facility ("FCF") in Cañon City, Colorado. *See generally Am. Compl.* [#7]. The remaining named Defendants in this matter consist of three FCF officials. *Id.* at 2-3. Defendant Siobhan Burtlow ("Burtlow") was the Warden of FCF; Defendant Joshua Lessar ("Lessar") was a lieutenant, and Defendant Stevens ("Stevens") was a sergeant, both of whom worked in the FCF mailroom at the relevant time. *Id.* All three Defendants are sued only in their individual capacities. *Id.*

During his time at FCF, Plaintiff decided to divorce his wife, Nichole Owens. *Id.* at 8. Plaintiff had family outside of FCF, specifically Samantha Owens, make arrangements with Nichole Owens to file divorce paperwork. *Id.* Plaintiff explains:

> I filled out my side of the legal paperwork then sent it to my family, Samantha Owens, so as to have a witness to Nichole Owens filling out her portion, as she can be very hard to track down, and to have the divorce papers sent back to me to be finalized, signed and notarized before sending them to the courts.

*Id.* Plaintiff further states that:

> On January/22/2021 at 13:06 Samantha Owens sent my divorce papers to me, Nathanael Owens #176493, through the United States Post Office by Priority First Class Mail with a tracking number: #9505 5105 9032 1022 4769 21. On January/27/2021 the staff at Fremont Correctional Facility violated my First Amendment Right to send and receive mail as well as denied me access to the courts by rejecting said mail at the Canon [sic] City Post Office. There is no reason this should have been rejected by D.O.C. for pickup at the Post Office.

*Id.*

Plaintiff alleges the basis on which each Defendant was involved in the rejection of mail and failure to notify Plaintiff, as follows.   First, Plaintiff states that Defendant Burtlow "was put on notice of the violation to my civil rights when my step 1 grievance was answered."  *Id*. at 4.  Plaintiff continues: "It is [Defendant Burtlow's] job as Warden to correct the problem but instead [Defendant Burtlow] [chose] to ignore the problem and in doing so became apart [sic] of the conspiracy [to] cover up the violation of [Plaintiff's] First [A]mendment right to send and receive first class mail."  *Id*.

Second, Plaintiff states that Defendant "Lessar is directly responsible for every decision in regards to, but not limited to, the collecting, handling, and distribution of inmate mail being that he is the direct supervisor of S.G.T. Stevens as well as all others working in the F.C.F. mailroom."  *Id*.  Plaintiff also states that, when Defendant Lessar became aware of the events that occurred and told Plaintiff that no one was violating Plaintiff's rights, Defendant "Lessar became a part of the conspiracy to violate [Plaintiff's] rights." *Id* at 5.

Finally, with respect to Defendant Stevens, Plaintiff states:

> It is my understanding and belief that Stevens is directly responsible for the handling of inmate mail up to and including but not limited to collecting inbound mail from the U.S. Postal Service.  Defendant is also responsible for sending out D.O.C. AR Form 300-38D Notice of Rejection/Disposition of Mail to inmates which he also failed to do further violating this inmate's right to send and receive mail.  Defendant had no penalogical [sic] or security interest to violate my First [A]mendment right to send and receive First class [sic] mail.

*Id*.

Plaintiff recognizes that his right to receive mail is not absolute, as he states: "As per [Administrative Regulation ("AR")] 300-38D the F.C.F. mailroom is required to notify me after it is determined if the contents of mail are not allowed against security or

penological interests." *Id*. at 8.  However, Plaintiff asserts that "the mailroom never sent said AR form to this inmate.  As a logical conclusion in simply rejecting my mail at the United States Post Office in Canon [sic] City Colorado there was no way to determine the contents of this tracked and important mail." *Id*. at 8-9.  Plaintiff first learned of the status of the mail in March 2021 when Plaintiff's mother contacted the post office to locate the mail. *Id*. at 9.  Plaintiff's mother had learned that the mail was rejected by FCF and then subsequently lost in the post office's system. *Id*.

After learning about the rejection of the mail, Plaintiff filed a formal grievance with FCF. *Id*.  In this grievance process, Plaintiff spoke with Kasey Artichoker ("Artichoker"), a grievance coordinator at FCF. *Id*. at 6.  Plaintiff recalls a portion of this exchange as follows:

> As the Administrative Grievance Coordinator at Fremont Correctional Facility [Artichoker] researched [the] incident and stated as per AR 300-38D, 'the mail was labeled as confidential but failed to meet the required [sic] for restricted mail.'  It failed to meet this [Artichoker] claims because there was no attorney's bar number.  As this mail was sent from my family not from an attorney there was no bar number to place on the mail.

*Id*.

After exhausting the grievance process at FCF, Plaintiff filed this suit. *Id*. at 9. Plaintiff states in the conclusion of his Amended Complaint [#7]: "In summary First Class mail was sent to this prisoner on January 22, 2021.  D.O.C. simply denied it without inspection on January 27, 2021 in lieu of security or penological reason.  This violated my First Amendment Right to send and receive mail." *Id*.  Plaintiff seeks nominal and punitive damages, injunctive relief that Defendants institute a policy to protect against future constitutional violations, court costs and fees, and anything else the Court deems appropriate. *Id*. at 11.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations.") (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][]that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

At the outset, the Court addresses two preliminary issues.  First, the Court notes that Plaintiff attempts to amend his Amended Complaint [#7] in his Response [#33]: "Plaintiff asks this Court to add the defendants [sic] pay for all of Plaintiff's divorce including but not limited to the [f]ees, the tracking down of Plaintiff's wife and any other costs that may come up in Plaintiff's divorce." *Response* [#33] at 7.  Plaintiff also asks "the Court to [subpoena] records from FCF of the day in question namely January 27, 2021." *Id*.  However, Plaintiff's requests to amend and subpoena are not properly before the Court.  "A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document."  D.C.COLO.LCivR 7.1(d).  Because there is no motion to amend the complaint before the Court, the Amended Complaint [#7] filed on November 3, 2021, remains the operative complaint.  Likewise, there is no motion to subpoena before the Court, and therefore the Court does not address this request.  If appropriate, Plaintiff may file separate motions making these requests.

Second, the Court addresses the AR to which Plaintiff refers.  Plaintiff states that AR 300-38D is simultaneously the form prison officials were required to send to Plaintiff,

the policy which resulted in the denial of mail from Samantha Owens, and the policy which requires notice to be given prior to the rejection of mail.  *See Am. Compl*. [#7] at 5 ("Defendant is also responsible for sending out DOC AR Form 300-38D."), 6 ("[Artichoker] researched [the] incident and stated as per AR 300-38D 'the mail was labeled as confidential but failed to meet the require[ments] for restricted mail' . . . because there was no attorney's bar number."), 8 ("As per AR300-38D the F.C.F. mailroom is required to notify me after it is determined if the contents of mail are not allowed against security or penological interests.").

The reason Plaintiff states he was given for the rejection of the mail appears to fall under section IV(B)(3) of the version of AR 300-38 that was in effect in January of 2021. This section discusses the requirements for confidential mail from legal counsel sent to prisoners.[3]  Section IV(B)(3)(b) states that the attorney's registration, bar, or license number must be present on the outside of the envelope.  When such mail fails to meet the requirements of AR 300-38(IV)(B)(3), then, according to AR 300-38(IV)(B)(4), the intended receiving prisoner is to be notified of the deficiency with AR Form 300-38 Attachment D and given the option to either waive the confidentiality of the mail or have it rejected and sent back to the sender with information directing the sender to AR 300-38(IV)(B)(3).  The Court construes Plaintiff's Amended Complaint [#7] to refer to these regulations based on Plaintiff's factual allegations and partial citation.  *See Barrett v. Orman*, 373 F. App'x 823, 825 (10th Cir. 2010) (stating that a pro se plaintiff only needs to state facts to establish a plausible claim and need not cite specific law).

---

[3]  The Court notes that there does not appear to be a provision permitting confidential mail to be sent to an inmate by family members.  *See* AR 300-38(IV)(B)(1).

Defendants seek dismissal of Plaintiff's Amended Complaint [#7] on the following grounds: (1) Plaintiff cannot be granted injunctive relief because Plaintiff only sued Defendants in their individual capacities; (2) Plaintiff has failed to allege that a First Amendment violation occurred; (3) Plaintiff has failed to allege that Defendants were personally involved in the purported violation of Plaintiff's First Amendment right; and (4) Defendants are entitled to qualified immunity.  *Motion* [#28] at 4-5, 8, 11.  The Court addresses each issue in turn.

## A.     Injunctive Relief

Defendants assert that Plaintiff cannot obtain the requested non-monetary relief because Plaintiff only sued Defendants in their individual capacities.  *Motion* [#28] at 5. Plaintiff's non-monetary request for relief is for Defendants to "institute policy, [sic] procedure to mitigate future constitutional violations to be determined by jury and or this court."  *Am. Compl.* [#7] at 11.

Plaintiff's claims against Defendants fall under 42 U.S.C. § 1983.  *Id.* at 3.  A plaintiff asserting such claims may only recover money damages from officials sued in their individual capacity and may pursue non-monetary relief only against officials sued in their official capacity.  *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011). Here, Plaintiff is only suing Defendants in their individual capacities; therefore, Plaintiff may only pursue monetary damages.  *See also Khan v. Barela*, 808 F. App'x 602, 610 (10th Cir. 2020) ("[Plaintiff] seeks only damages, his claim may proceed against [Defendant] only in an individual capacity.").  In other words, there is no possible set of facts that Plaintiff could assert that would permit Plaintiff to pursue injunctive relief against Defendants in their individual capacities.

Accordingly, the Court **recommends** that the Motion [#28] be **granted** to the extent that all claims against Defendants in their individual capacities for injunctive relief be **dismissed with prejudice**. *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (explaining that a pro se complaint may be dismissed for failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

## B. Constitutional Claims

Defendants assert that Plaintiff has failed to sufficiently allege a violation of his First Amendment right to receive mail. *Motion* [#28] at 8. Liberally construing the Amended Complaint [#7], Plaintiff has alleged a factual basis for two potential bases for a constitutional violation. The first basis is the rejection of the mail from Samantha Owens. *Am. Compl.* [#7] at 8 ("On January/27/2021 the staff at Fremont Correctional Facility violated my First Amendment Right to send and receive mail as well as denied me access to the courts by rejecting said mail at the Canon [sic] City Post Office.").[4] The second basis for a potential constitutional violation is the failure to notify Plaintiff of the rejection of mail. *Id.* at 5 (stating that the failure to notify Plaintiff via AR Form 300-38D "further [violated] [Plaintiff's] right to send and receive mail"). The Court addresses these bases separately.

### 1. Rejection of Mail

Plaintiff's first basis for a constitutional claim appears to be based on the rejection of his mail separate from any failure to notify Plaintiff. *Am. Compl.* [#7] at 8.

---

[4] Pursuant to the Court's prior Recommendation [#10] and subsequent Order [#12], the access-to-courts claim has been dismissed.

Plaintiff was informed in the grievance process that the mail was rejected because "the mail was labeled as confidential but failed to meet the [requirements] for restricted mail." *Id.* at 6. In other words, Plaintiff was informed that the mail from Samantha Owens was rejected due to a prison regulation regarding confidential mail. There are no allegations to show that Samantha Owens is an individual permitted under AR 300-38 (IV)(B)(1) to send confidential mail to Plaintiff. Therefore, Plaintiff's challenge to the rejection of confidential mail from Samantha Owens appears to be a challenge to the existing policy regarding the mail in question.

"When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). "In ruling on a motion to dismiss, a court need only assess, as a general matter, whether a prison regulation is 'reasonably related to a legitimate penological interest.'" *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010)). "This is not to say that [a plaintiff] must identify every potential legitimate interest and plead against it; we do not intend that pro se prisoners must plead, exhaustively, in the negative in order to state a claim. It is sufficient that he plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Gee*, 627 F.3d at 1188. It is the inmate's burden to demonstrate a lack of legitimate, rational basis for mail restrictions. *Al-Owhali*, 678 F.3d at 1241.

Plaintiff states that "there is no reason [the mail from Samantha Owens] should have been rejected by D.O.C. for pickup at the Post Office." *Am. Compl.* [#7] at 8. At the close of each description of each Defendant, Plaintiff states, "Defendant had no

pen[o]logical or security interest to violate my First Amendment right to send and receive mail." *Id*. at 4-7.   Plaintiff does not go beyond these assertions in explaining why Defendants lacked a legitimate penological reason for rejecting the mail from Samantha Owens. *See generally Am. Compl*. [#7].

Plaintiff's bare assertions that Defendants lacked any reason to deny the mail from Samantha Owens are insufficient because a plaintiff must plead "facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Gee*, 627 F.3d at 1188.   Plaintiff's Amended Complaint [#7] provides an explanation for the rejection of the mail: that the mail was labeled confidential but did not meet the AR's requirements for confidential mail. *Am. Compl*. [#7] at 6.   Yet, Plaintiff does not provide any facts that tend to indicate that the policy or the application of the policy to Plaintiff was not reasonably related to a legitimate penological interest. *See generally Am. Compl*. [#7].   CDOC's AR 300-38(IV)(A)(2) notes that "[m]ail is read, censored, or rejected based on legitimate institutional interests of order and security." The mere conclusory statement that Defendants lacked any penological interest in denying him access to confidential mail from a family member is not sufficient in the absence of supporting non-conclusory allegations to show that the rejection of non-attorney mail marked "confidential" does not further the prison's interests of order and security. *Iqbal*, 556 U.S. at 678 (holding that a complaint that tenders assertions lacking factual enhancement is insufficient).   While a pro se complaint is to be construed liberally, this does not permit a court to make a finding regarding the plausibility of a legitimate penological interest without the support of any non-conclusory allegations. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that the broad reading of a pro se

plaintiff's complaint "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

This issue regarding the restriction of prison mail was addressed by the Tenth Circuit Court of Appeals in *Al-Owhali v. Holder*, 687 F.3d at 1240-41.  The plaintiff in *Al-Owhali* was prohibited from writing letters to his nieces and nephews and asserted that this violated his First Amendment rights.  687 F.3d at 1240-41.  The only fact that he alleged to support the assertion that the prison officials lacked a penological interest in restricting his correspondence was that he had not violated any Special Administrative Measures imposed by prison officials prior to the restriction.  *Id*. at 1241.  The Tenth Circuit held that "this assertion fails to address whether the restriction was supported by a rational penal interest.  Accordingly, dismissal of this claim was appropriate."  *Id*.  Here, Plaintiff has not alleged any facts in support of the assertion that Defendants lacked a penological interest in denying the mail from Samantha Owens.  *See generally Am. Compl*. [#7].

Accordingly, the Court **recommends** that the Motion [#28] be **granted** to the extent that Plaintiff's First Amendment claim against Defendants arising from the rejection of confidential mail from Samantha Owens pursuant to AR 300-38 be **dismissed without prejudice**.  *See Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (holding that "[if] it is at all possible that a party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend").

### 2.    Minimum Procedural Safeguards

Plaintiff asserts that his "First [A]mendment right to send and receive mail" was "further [violated]" when Defendant Stevens failed to notify Plaintiff that the mail from

Samantha Owens would be rejected. *Id.* at 5. "The interests of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment. As such, it is protected from arbitrary governmental invasion." *Procunier v. Martinez*, 416 U.S. 396, 418 (1974*), overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). "The decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." *Id.* at 417. The procedural safeguards that the Supreme Court accepted in *Martinez* as sufficient to protect this liberty interest were "that an inmate be notified of the rejection of a letter written by or addressed to him, that the author of that letter be given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official other than the person who originally disapproved the correspondence." *Id.* at 418-19.

The holding in *Procunier v. Martinez* decision was applied to facts similar to Plaintiff's in a Tenth Circuit Court of Appeals case styled *Barrett v. Orman.* The plaintiff in *Barrett*, after becoming aware that his mail had been rejected without him being notified, filed a grievance with the prison and was denied relief. 373 F. App'x at 824. After being denied relief in the grievance process, the *Barrett* plaintiff sued prison officials under 42 U.S.C. § 1983. *Id*. The court held that "the alleged facts in Mr. Barrett's complaints—that specific incoming mail was being rejected without any notice, statement of reasons, or opportunity to be heard—at least stated a plausible claim under the Supreme Court's decision in *Procunier v. Martinez* . . . ." *Id*. at 825.

The Third Circuit Court of Appeals has also applied the *Martinez* holding to facts similar to those alleged here.  *See Vogt v. Wetzel*, 8 F.4th 182, 186-87 (3d Cir. 2021).   In *Vogt v. Wetzel*, the plaintiff had not been given a letter which was sent to him because the prison had a policy of rejecting letters that did not have a return address.  *Id*. at 184. Months after the letter was rejected, the inmate was informed of the letter by the Post Office while he was looking for a different mailing.  *Id*.  He had never received notice that the letter had been rejected, and the court held, "under the Supreme Court's decision in *Procunier v. Martinez* . . . prisons must notify inmates when their incoming mail is rejected."  *Id*.  The court explained that inmates have a liberty interest in communicating by mail that is distinct from a First Amendment right to free speech.  *Id*. at 186.  The court also held that a pro se inmate does not need to mention his Fourteenth Amendment right to due process by name but instead can allege a rejection without notice and the "courts must apply the applicable law."  *Id*. at 185.

While Plaintiff here only specifically cites a violation of his First Amendment right to the mail, the Court liberally construes Plaintiff's pro se Amended Complaint [#7] to include a Fourteenth Amendment claim.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed."); *Hall*, 935 F.2d at 1110 ("If the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's . . . confusion of various legal theories."); *see also Martinez*, 416 U.S. at 418 (stating that a prisoner's First Amendment right to mail "is plainly a liberty interest within the meaning of the Fourteenth Amendment").   The interception of mail addressed to a prisoner without notifying the sender or receiver is a plausible "deprivation of the Fourteenth Amendment's Due Process Clause."   *Skibo v.*

*Rhodes*, No. CIV-10-1381-C, 2011 WL 2600542, at *4 (W.D. Okla. May 19, 2011).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Stanko v. Maher*, 419 F.3d 1107, 1115 (10th Cir. 2005) (quotation omitted).

Plaintiff has alleged that a specific piece of mail was rejected without any notice prior to or after said rejection.  *Am. Compl.* [#7] at 8-9.  Plaintiff states that he only learned of the rejection approximately two months later when the Post Office informed his mother that the mail had been rejected.  *Id.* at 9.  Plaintiff further identifies the mail rejected as "Priority First Class Mail with a tracking number: # 9505 5105 9032 1022 4769 21."  *Id.* at 8.  Based on these allegations, the Court finds that Plaintiff has sufficiently alleged facts "that specific incoming mail was being rejected without any notice, statement of reasons, or opportunity to be heard" and therefore has "at least stated a plausible claim under the Supreme Court's decision in *Procunier v. Martinez*" for a violation of his Fourteenth Amendment right as a prisoner to be "protected from arbitrary governmental invasion" into his receipt of mail.  *Barrett*, 373 F. App'x at 825; *see also Vogt*, 8 F.4th at 184-85.

Accordingly, the Court **recommends** that the Motion [#28] be **denied** with respect to Defendants' argument that Plaintiff has failed to state a claim regarding notice to Plaintiff of the rejection of his mail, as construed by the Court under the Fourteenth Amendment.[5]

---

[5] Although unclear, Plaintiff may also be attempting to assert a § 1983 conspiracy claim against the three Defendants.  The Tenth Circuit has stated that "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under the color of state law" is actionable.  *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990).  In order to establish the existence of a conspiracy, a plaintiff seeking redress must show that there was a "single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences."  *Id.* at 701-02.  Here, there are no factual allegations to support a reasonable inference that the Defendants shared a specific goal to violate Plaintiff's constitutional rights by engaging in a

C.     **Defendants' Alleged Participation**

Defendants assert that Plaintiff has not sufficiently alleged that any of them personally participated in the purported violation of Plaintiff's rights.   *Motion* [#28] at 5. The Court only addresses Defendants' alleged participation in the remaining Fourteenth Amendment claim.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). "Supervisory status alone does not create § 1983 liability."  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (quoting *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008)).   "Rather, there must be an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, exercise of control or direction, or failure to supervise."  *Id.* at 1069 (quotations and brackets omitted).  "Denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."  *Id.* at 1069. A plaintiff may succeed in a § 1983 suit against a defendant-supervisor if the plaintiff demonstrates "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

---

particular course of action.  Furthermore, the allegations are insufficient to show agreement or concerted action, particularly where, as noted throughout this Recommendation, Plaintiff alleges that Defendant Burtlow did not know about the alleged violation of Plaintiff's rights until after it occurred, that Defendant Lessar did not know about the alleged violation until nearly two months later, and that both of these Defendants, when told by Plaintiff what happened, essentially did nothing about it.  Thus, even if Plaintiff were asserting a § 1983 conspiracy claim, such a claim would fail.

Plaintiff discusses the involvement of Defendants Burtlow, Lessar, and Stevens separately. *Am. Compl.* [#7] at 4-5. He appears to assert personal involvement and supervisory involvement related to both Defendants Burtlow and Lessar, and only personal involvement related to Defendant Stevens. *Id.*

First, Plaintiff asserts supervisory involvement of both Defendant Burtlow and Defendant Lessar. Plaintiff has asserted that his Fourteenth Amendment right was violated when AR 300-38 was not followed. *Id.* at 8. Plaintiff's contention regarding Defendant Burtlow is that he had a duty "as Warden to correct the problem." *Id*. at 4. Plaintiff's contention regarding Defendant Lessar is that he is "the direct supervisor of S.G.T. Stevens . . ." who is "responsible for sending out DOC AR Form AR300-38D . . . ." *Id.* In *Dodds v. Richardson*, 614 F.3d at 1199, the Tenth Circuit Court of Appeals stated that a defendant-supervisor must promulgate, create, implement, or be responsible for the continued operation of a policy that causes the complained of harm in order to be found liable. Because Plaintiff's complained of constitutional harm, i.e., the failure to notify him of the rejection of his mail, is, as alleged, the *violation* of a policy, and not the correct *operation* of a policy, Plaintiff has failed to allege facts to support defendant-supervisor liability against both Defendants Burtlow and Lessar.

Regarding Defendant Burtlow's alleged personal involvement, Plaintiff states that Defendant Burtlow "was put on notice of the violation to my civil rights when my step 1 grievance was answered." *Am. Compl.* [#7] at 4. Plaintiff then states that Defendant Burtlow chose "to ignore the problem and in doing so became apart [sic] of the conspiracy [to] cover up the violation of my [Fourteenth] [A]mendment right to send and receive first class mail." *Id*. Plaintiff does not allege that Defendant Burtlow was involved in the failure

to provide Plaintiff notice of the mail from Samantha Owens before or after it was rejected. *See generally Am. Compl.* [#7].  Taking Plaintiff's assertions as true, Defendant Burtlow was not aware of the incident underlying Plaintiff's Fourteenth Amendment claim until after Plaintiff filed a grievance.  This shows a lack of the required personal involvement on the part of Defendant Burtlow for § 1983 liability.  *See Foote*, 118 F.3d at 1423.

Regarding Defendant Lessar's personal involvement, Plaintiff states that Defendant Lessar "became aware of the violation without question a few days before answering my step one grievance."  *Am. Compl.* [#7] 4-5.  However, this allegation of Defendant Lessar having personal knowledge a few days prior to Plaintiff's grievance does not show that Defendant Lessar personally participated in the alleged incident, given the nearly two months between the alleged failure to notify Plaintiff and Plaintiff beginning the grievance process.  *Id*. at 8 ("On January/27/2021 the staff at Fremont Correctional Facility . . . [rejected] said mail at the Canon [sic] City Post Office."), 9 ("The Post Office [sic] informed my mother, Sheryl Callies . . . in March 2021 that the mail was [] [] rejected . . . once I was informed of this . . . I proceeded to . . . the grievance process.").  Plaintiff has not alleged facts showing that Defendant Lessar plausibly personally participated in the alleged violation of Plaintiff's Fourteenth Amendment right as required under § 1983. *See generally Am. Compl*. [#7]; *Gallagher*, 587 F.3d at 1069.

Finally, Plaintiff asserts that Defendant "[Stevens] is [] responsible for sending out DOC AR Form 300-38D Notice of Rejection / Disposition of Mail to inmates."  *Am. Compl*. [#7] at 5.  Plaintiff asserts that Defendant Stevens' failure to notify Plaintiff of the mail from Samantha Owens "[violated] this inmate's right to send and receive mail."  *Id*.  Plaintiff does not appear to assert that Defendant Stevens is liable due to supervisory authority,

but instead due to his personal role in failing to send Plaintiff a completed AR Form 300-38D.

The decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." *Martinez*, 416 U.S. at 417. AR 300-38(IV)(B)(4) appears to establish some safeguards similar to those in *Martinez* in that it calls for notification to the relevant inmate and permits the inmate to either waive confidentiality or have the mail returned to sender with instructions for proper mailing of confidential mail. Plaintiff pleads that Defendant Stevens was the individual responsible for ensuring that such safeguards are upheld by issuing AR Form 300-38D to the relevant inmate. *Am. Compl.* [#7] at 5. Plaintiff states that Defendant Stevens failed to issue AR Form 300-38D in relation to the rejected mail from Samantha Owens. *Id*. Further, Plaintiff asserts that when he did get notice of the rejected mail, it was from his mother nearly two months later. *Id*. at 9. Taking Plaintiff's alleged facts as true, Defendant Stevens was the individual responsible for providing Plaintiff with minimal procedural safeguards and failed to do so. *Id*. at 5.

Accordingly, the Court **recommends** that the Motion [#28] be **granted** to the extent that the Fourteenth Amendment claim against Defendants Burtlow and Lessar be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 126. Further, the Court **recommends** that the Motion [#28] be **denied** to the extent that Defendants argue that Defendant Stevens did not participate in the alleged violation of Plaintiff's Fourteenth Amendment rights.

**D.     Qualified Immunity**

Defendants contend that they are entitled to qualified immunity. *Motion* [#28] at

11. "Courts should resolve the purely legal question raised by a qualified immunity

defense at the earliest possible stage in litigation." *Medina v. Cram*, 252 F.3d 1124, 1127-

28 (10th Cir. 2001) (quotations omitted). Qualified immunity, in certain circumstances,

protects government officials from litigation when they are sued in their individual

capacities. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982). A government

official is entitled to qualified immunity from liability for civil damages when the official's

allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional

rights that were clearly established at the time of the conduct. *Id.* at 818. A government

official is entitled to qualified immunity in "[a]ll but the most exceptional cases." *Harris v.

Bd. of Educ. of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

The initial issue is whether the facts taken in the light most favorable to the plaintiff

sufficiently allege a constitutional violation. *Saucier v. Katz*, 553 U.S. 194, 201 (2001).

"If a violation could be made out on a favorable view of the parties' submissions," a court

must "ask whether the right was clearly established." *Id.* at 201. "In determining whether

the right was clearly established, the court assesses the objective legal reasonableness

of the action at the time of the alleged violation and asks whether the right [was]

sufficiently clear that a reasonable officer would understand that what he is doing violates

that right." *Medina*, 252 F.3d at 1128 (quotations omitted). "Ordinarily, in order for the

law to be clearly established, there must be a Supreme Court or Tenth Circuit decision

on point, or the clearly established weight of authority from other courts must have found

the law to be as the plaintiff maintains." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir.

2001). "We have never said that there must be a case presenting the exact fact situation

at hand in order to give parties notice of what constitutes actionable conduct.  Rather, we require parties to make reasonable application of the prevailing law to their own circumstances."  *Murrell v. Sch. Dist. No. 1, Denver, Colo*., 186 F.3d 1238, 1251 (10th Cir. 1999).

As discussed above, Plaintiff pleads a plausible violation of his Fourteenth Amendment right based on the asserted lack of notice or other procedural safeguards in the rejection of a specific piece of mail to him from Samantha Owens.  Thus, the remaining question for qualified immunity is whether this right was clearly established when it was allegedly violated by Defendant Stevens.  As explained below, the Court finds that Plaintiff's right was clearly established at the time of its purported violation, given that the right at issue has been formally recognized since the *Martinez* decision in 1974.  In that ruling, the Supreme Court stated that "the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards."  416 U.S. at 417.[6]

To be clearly established, defendants must be able to "make reasonable applications of the prevailing law to their own circumstances."  *Murrell*, 186 F.3d at 1251. The Court's analysis in *Martinez* itself applied prevailing law to the circumstances at hand.

---

[6]  Plaintiff's asserted Fourteenth Amendment right has also been recognized by the Tenth Circuit Court of Appeals.  "Both inmates and publishers have a right to procedural due process when publications are rejected."  *Jacklovich v. Simmons*, 392 F.3d 420, 433 (10th Cir. 2004).  The court's decision in *Jacklovich v. Simmons* affirms the core legal principal that a prisoner has a due process right to minimal procedural safeguards surrounding the rejection of incoming mail.  In addition, the Court also notes that this right was recognized in the Tenth Circuit's decision in *Barrett*.  In that decision, the court was tasked with determining whether the plaintiff's allegation that "specific incoming mail was being rejected without any notice, statement of reasons, or opportunity to be heard" was sufficient to survive a Rule 12(b)(6) motion.  373 F. App'x at 825. However, as an unpublished case, *Barrett* generally may not be utilized in the "clearly established" analysis.

416 U.S. at 418 (stating that a prisoner's right to mail correspondence, grounded in the First Amendment, "is plainly a liberty interest within the meaning of the Fourteenth Amendment . . . [and] as such, it is protected from arbitrary governmental invasion").  Here Plaintiff complains of governmental invasion in violation of his right to receive mail based on the Fourteenth Amendment.  *Am. Compl.* [#7] at 9.   Although Plaintiff was not necessarily constitutionally entitled to receive a copy of the specific AR form notifying him that his mail was rejected, the law was clearly established that he was entitled to *some form* of notification.   Here, he has alleged that he received none.   Thus, Defendant Stevens is not entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim.

Accordingly, the Court **recommends** that Defendants' Motion [#28] be **denied** with respect to Defendants' qualified immunity argument as it pertains to Defendant Stevens and Plaintiff's Fourteenth Amendment claim.

### IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **RECOMMENDED** that the Motion [#28] be **GRANTED** in part and **DENIED** in part.  The Court **recommends** that the Motion [#28] be **granted** to the extent that Plaintiff's claim for injunctive relief be **dismissed with prejudice** against Defendants in their individual capacities, that Plaintiff's First Amendment claim be **dismissed without prejudice** against Defendants, and that Plaintiff's Fourteenth Amendment claim be **dismissed without prejudice** against Defendants Burtlow and Lessar.   The Court **recommends** that the Motion [#28] be **denied** with respect to Plaintiff's Fourteenth Amendment claim against Defendant Stevens.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: October 4, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge